UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIA C. WHITTAKER,

    *Plaintiff*,    CASE NO. 09-CV-11463

v.    DISTRICT JUDGE GERALD E. ROSEN
    MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the relevant evidence of record in this case, I suggest that substantial evidence supports the Commissioner's determination. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 15, 18.)

Plaintiff was 49 years of age at the time of the most recent administrative hearing. (Transcript, Docs. 10 and 11 at 16, 421.) Plaintiff's relevant employment includes work as an assistant professor at Ohio State University for five years, as a federal district court law clerk for two years, a trial attorney for a federal agency for one year and a staff attorney at a legal aid clinic for three years. (Tr. at 451.) Plaintiff also worked part-time at Lowe's home improvement store for six months and at various nurseries and garden centers for several months at a time between the years of 2001-07. (Tr. at 463, 495.) Plaintiff filed the instant claims on October 20, 1998, alleging that she became unable to work on January 1, 1994. (Tr. at 421.) However, in March of 1999, Plaintiff indicated that she wished to amend her alleged onset date to June 13, 1994. (Tr. at 118, 459.) On January 7, 1999, and as reconfirmed on March 19, 1999, Plaintiff was notified that her claim of disability based on bipolar mood disorder and borderline personality disorder was denied at the initial administrative level. (Tr. at 36, 37.)

On May 4, 1999, Plaintiff was notified of a determination of benefit adjustment. (Tr. at 31.) In May or early June of 1999,[2] Plaintiff was notified that she was entitled to monthly disability benefits beginning April 1997 through April 1999 and that she would be receiving scheduled payments from that date forward. (Tr. at 113.) On July 12, 2000, Plaintiff was notified that the Social Security Administration (SSA) had considered January 1999 through September 1999 her trial work period months and had concluded that the work she had done during those months did not indicate that she could "do substantial work." (Tr. at 108.)

---

[2]The document is not dated.

2

On October 15, 2002, Plaintiff was notified of a proposed decision by the SSA that her disability ended because of substantial work, such that she would not be entitled to benefits for January 2000 through November 2000, March 2001 through July 2001, and September 2001 through October 2001. (Tr. at 27-29, 102.) The proposed decision became a final decision on November 5, 2002. (Tr. at 89.) Plaintiff requested reconsideration of this decision on November 28, 2002. (Tr. at 88.)

On February 11, 2005, the SSA determined that Plaintiff's "disability should have ceased 06/00." (Tr. at 64, 77.) The SSA indicated that "[u]sually we consider your work to be substantial and gainful if your monthly earnings average over $500.00 ($700.00 for 07/99 through 12/00, $740.00 for 01/01 through 12/01, $780.00 for 01/02 through 12.02, $800.00 for 01/03 through 12/03, $810.00 for 01/04 through 12/04, and $830.00 beginning 01/05), after allowable expenses." (Tr. at 64, 77.) The SSA found that Plaintiff began doing substantial and gainful work in June 2000 and since the "law gives 2 more months of payment after the month of cessation, [] benefits continue through 08/00." (Tr. at 65, 78.)

On November 20, 2004, the SSA notified Plaintiff that she had been overpaid a total of $10,359.50. (Tr. at 69.) A determination noting the cessation of disability was entered on February 3, 2005. (Tr. at 25.) On April 18, 2005, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 62.) On May 27, 2005, the SSA notified Plaintiff of a determination of benefit adjustment, i.e., termination. (Tr. at 23.) The ALJ assigned to the case, Susan B. Blaney, wrote to Plaintiff on June 2, 2007, requesting copies of any cancelled checks for "medical/psychological/medication expenses [Plaintiff] paid during the time at issue" and asking her to "bring those to the hearing" because the ALJ was "unable to tell what of the medical and psychological expenses [Plaintiff] paid and what was paid by insurance." (Tr. at 49.) On June 25,

2007, Plaintiff filed a Request for Waiver of Overpayment Recovery asserting that she was "due the alleged 'overpayment' because there were IRWE's[3] [sic] which reduced my earnings below the SGA and unsuccessful work attempts." (Tr. at 40.) Plaintiff also stated that "it is not my fault that you cont'd payment: the SSA." (Tr. at 41.)

At the hearing held on June 27, 2005, the ALJ made the following findings:

1. Claimant was overpaid benefits in June 2000 and from March 2001 through July 2001 only due to excess income during her extended period of eligibility. Her disability ceased January 1, 2004, and she was therefore no longer eligible to receive benefits for that year only.

2. Claimant is without fault in causing and/or accepting the overpayment.

3. The testimony of claimant at the hearing was credible.

4. Claimant's disability did not cease until January 1, 2004, due to the expiration of her trial work period, an extended period of eligibility, and her apparent ability to earn substantial gainful income beginning that day even after impairment related work expenses are deducted using claimant's average earnings and average medical expenses for that year.

5. The Social Security Administration must recalculate the amount of claimant's overpayment for June 2000 and from March 2001 through July 2001, and for 2004 if any, and must advise claimant of the new and remaining amount of overpayment.

6. Recovery of the overpayment for June 2000 and from March 2001 through July 2001, and for 2004 if any, is not waived because it would not be against equity and good conscience, but may be recovered only at a rate of no more than $50.00 per month.

(Tr. at 22.) The Appeals Council vacated the ALJ's decision with respect to her findings regarding fault and waiver because it found that "those issues were not before her." (Tr. at 10.) In addition, the Appeals Council concluded that:

the claimant's disability ceased June 2000, and that she was due payment for two grace months, through August 2000. She was not entitled to benefits March 2001 through July 2001 and July 2002 through August 2002. The claimant's re-

---

[3]IRWEs are Impairment Related Work Expenses. *See* 20 C.F.R. § 404.1576.

4

>entitlement period ended September 2002, and her benefit termination month was October 2002, the first month in which she performed substantial gainful activity after the completion of re-entitlement period.

(Tr. at 10.) On April 17, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted, in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *Accord Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ,

and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *Accord Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility" (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the

courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis; however, since neither the ALJ nor the Appeals

Council reached any issues beyond Step One, the analysis is limited to the question whether Plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534.

### D. Analysis & Conclusions

Plaintiff contends that from July 1999 through December 2000, her "earnings varied monthly (a good reason to average) however this variance was *the* 'work patter[n] or earnings' which did not significantly change throughout the period the substantial gainful activity earning level was $700, July 1999 to December 2000." (Doc. 15 at 9.) Plaintiff contends that the Commissioner "erred in finding that the [Plaintiff's] disability had ceased in June 2000" because that month's countable earnings should have been averaged with the earnings from July through December 2000. (Doc. 15 at 11.) If Plaintiff's countable earnings in June 2000 are added to the months of July through December 2000, Plaintiff's average earnings for those months would be $434.57, below the $700 substantial gainful amount for that period. (Doc. 15 at 11.) Plaintiff does not challenge the Commissioner's determinations made in 2001-02. (Doc. 15; Doc. 18 at 14.)

Defendant contends that the Commissioner did not average her earnings from June 2000 with the remainder of the months in 2000 because there was a substantial change in her earnings during the month of June 2000. (Doc. 18 at 12.) Defendant further argues that it also did not average June 2000 earnings because it had determined that Plaintiff's disability has ceased because she was engaged in substantial gainful activity. (Doc. 18 at 12.) Defendant also notes that any argument as to the ALJ's opinion is extraneous since the ALJ's opinion is not before this Court for review; only the Appeals Council decision is subject to review in the instant case. (Doc. 18 at 12.) Finally, Defendant contends that even if Plaintiff had challenged the Appeals Council findings regarding the months of her re-entitlement period (2001-02), substantial evidence supports

8

the Commissioner's decision that Plaintiff was engaged in substantial gainful activity during the months of her re-entitlement period such that her benefits were properly terminated in October 2002. (Doc. 18 at 13-14.)

"When and how" the Defendant Commissioner will average earnings is governed by 20 C.F.R. § 404.1574a. The regulations indicate that "[i]f you work over a period of time during which the substantial gainful activity earnings levels change, we will average your earnings separately for each period in which a different substantial gainful activity earnings level applies." 20 C.F.R. § 404.1574a(b). However, the regulations also state that "[i]f there is a significant change in your work pattern or earnings during the period of work requiring evaluation, we will average your earnings over each separate period of work to determine if any of your work efforts were substantial gainful activity." 20 C.F.R. § 404.1574a(c). In addition, the regulations provide that the Commissioner "will not average your earnings in determining whether benefits should be paid for any month(s) during or after the reentitlement period that occurs after the month disability has been determined to have ceased because of the performance of substantial gainful activity." 20 C.F.R. § 404.1574a(d).[4]

Plaintiff acknowledges that her countable earnings totaled $856.25 for June 2000 and that such figure exceeds the $700 mark for substantial gainful activity. (Doc. 15 at 11.) Plaintiff's only claim of error is that the June 2000 figure should not have been considered independently but rather should have been averaged in with July through December 2000. (Doc. 15 at 9-11.) The Appeals Council found that Plaintiff's "disability ceased June 2000, and that she was due payment for two grace months, through August 2000." (Tr. at 10.) Since the regulations provide that monthly earnings will not be averaged for any month where her disability has been determined to

---

[4] The regulations refer to 20 C.F.R. § 404.1592a for information on the re-entitlement period.

9

have ceased because of the performance of substantial gainful activity, 20 C.F.R. § 404.1574a(d), I suggest that the Appeals Council's decision not to average Plaintiff's June 2000 earnings is supported by substantial evidence. In addition, the decision not to average in June 2000 is also supported by the regulation which provides that a month, or period of months, exhibiting a significant change in income will be considered separately and will not be averaged in with other, dissimilar months. 20 C.F.R. § 404.1574a(c). I therefore suggest that the contested portion of the decision of the Appeals Council is supported by substantial evidence.

I further suggest that the remaining uncontested findings made by the Appeals Council with respect to the re-entitlement period (2001-02) are also supported by substantial evidence. (*See* Tr. at 10.) I therefore suggest that the decision of the Commissioner be affirmed, that Defendant's motion for summary judgment be granted, and that Plaintiff's motion for summary judgment be denied.

### III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*,

454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

        s/ Charles E. Binder
        CHARLES E. BINDER
Dated: December 16, 2009        United States Magistrate Judge

**CERTIFICATION**

    I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System and served, via United States Postal Service, on the following non-ECF participant: Maria C. Whittaker, 2268 Stone Road, Ann Arbor, MI 48105.

Date:  December 16, 2009        By    s/Patricia T. Morris
                                    Law Clerk to Magistrate Judge Binder